**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | | |
|---|---|---|
| **BRIDGE CAPITAL INVESTORS II,** | : | |
| **Plaintiff,** | : | |
| vs. | : | 3:02-CV-80 (CAR) |
| **PRESTON W. SMALL,** | : | |
| **Defendant.** | : | |

*ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

Before the Court is Plaintiff's Motion for Summary Judgment [Doc. 91] as to Defendant Small's Counterclaim [Doc. 40]. Defendant Small filed a Response [Doc. 94], and Plaintiff filed a Reply [Doc. 98]. After carefully considering the parties' arguments and the relevant case law, the Court **GRANTS** Plaintiff's Motion for Summary Judgment in full.

**BACKGROUND**

The factual background of the initial dispute which gave rise to this lawsuit between Plaintiff Bridge Capital Investors, Inc. ("BCI") and Defendant Preston W. Small ("Small") is outlined in great detail in Judge Lawson's Order, dated November 26, 2002. [Doc. 30]. The Court will now set forth only the facts most pertinent to this motion.

In February 1990, Emerald Broadcasting of the South, Inc. ("Emerald"), Plaintiff BCI's predecessor in interest, was attempting to obtain a construction permit in order to

1

move its radio station WHMA ("WHMA" or "the Station"), and the site preference, construction permit, and allocation proposal for Defendant Small's station directly conflicted with Emerald's "Relocation Plans." On February 12, 1990, Mr. Small entered into the "Small Agreement" with Emerald and Crown Broadcasting ("Crown"), which were two companies wholly owned by Mr. Thomas P. Gammon. Mr. Small was paid $2 million in exchange for his agreement not to "interfere or conflict with or delay" the Relocation Plans. Specifically, Mr. Small covenanted and agreed to the following:

> [T]hat neither he nor any of his partners, agents, or employees will file or assist in, suggest, or otherwise encourage the filing of, any Petition for Rule Making, Counterproposal or any other pleading, application, or amendment to any pleading or application before the Commission or any other forum, or engage in any other conduct which would in any manner interfere or conflict with or delay the Relocation Plans. (Small Agreement ¶ 4.)

The Small Agreement also provided that Emerald was to pay Small an additional $1,000,000.00 if Emerald sold the Station to a person or entity, provided that Emerald, Crown, or Mr. Gammon did not hold any interest in the person or entity to whom the Station was sold. (Small Agreement ¶ 6.2.). Paragraph 6.2 of this agreement, titled "Success" reads:

> On the earlier of (i) six (6) months after the date the grant to Emerald of a construction permit which authorizes facilities for WHMA or an Affiliated Station (as defined below) with a transmitter site that is closer to the Alabama/Georgia boarder, or beyond that boarder, than its current side (or an
> authorization for increased power that would accomplish a similar result) becomes a Final Order (as defined below) or (ii) within twenty (20) days after
> the day Emerald begins program tests pursuant to such a permit, Emerald will
> pay Small One Million Dollars ($1,000,000.00) in cash by wire transfer or certified check; provided, however, that if (x) Emerald assigns the license for

> WHMA or transfers control of Emerald to a person or entity in which none of Crown or Gammon, or in the case of an assignment, Emerald, hold any interest (an "Assignment") and (y) on the date of the consummation of the Assignment there is pending before the Commission a rulemaking proposal and/or an application that if adopted and/or granted would permit WHMA to provide the service contemplated by this subsection, Emerald shall pay to Small One Million Dollars ($1,000,000.00) on or before the consummation of the Assignment; provided further, that if no such proposal or application is pending, no amount shall thereafter become due under this section and Small may modify WPWS at his leisure. Affiliated Station means a station in which Emerald, Crown or Gammon have a direct or indirect ownership interest or the owners of which have entered into an agreement with Emerald, Crown or Gammon, or any entity of which Emerald, Crown, or Gammon have an indirect or direct ownership interest, whereby any one or all benefit from the provisions of this Agreement. Final Order means an order or action that, by expiration of time or otherwise is no longer subject to judicial or administrative review or reconsideration. (Small Agreement ¶ 6.2.)

On January 3, 1991, Emerald merged with Sapphire Broadcasting, Inc. The name of the surviving corporation was "Emerald Broadcasting of the South, Inc." Later that day, the name of the corporation was changed to "Sapphire Broadcasting, Inc." ("Sapphire"). [Doc.6, Goodrich Aff. 2 Ex. C.].

On June 7, 1991, Mr. Gammon, the sole stockholder of Sapphire, pledged all of his shares of Sapphire to BCI.  On July 1, 1992, in an "Agreement to Sell Stock and Release Collateral" by Mr. Gammon to BCI, Mr. Gammon agreed to transfer and convey all of his shares of Sapphire to BCI or its assignee, subject to approval of the FCC (which was later granted on October 26, 1992).  On May 12, 1994, Mr. Gammon entered into a "Participation Agreement" and transferred his Sapphire stock as he had committed to do.

On November 6, 1996, Sapphire entered into an agreement (the "Susquehanna Agreement") to sell the assets of the Station to Susquehanna Radio Corp ("Susquehanna").

The Susquehanna Agreement provided that Sapphire would transfer the FCC authorization for the Station and other assets of Sapphire to Susquehanna. The Susquehanna Agreement closed on May 22, 1997, with the transfer of assets occurring on that date.

In December 1996, Small consented to the filing with the FCC of a station relocation petition for his station, WPWS, by his assignee (Scott's Trail Radio), and Scott's Trail concurrently filed a petition to dismiss the Emerald/Sapphire petition to relocate WHMA to the northwest Georgia area. [Doc. 23, ¶ 29; see also, Doc. 6, ¶¶ 20-21]. As a result of Scott's Trail's petition to dismiss, the FCC dismissed Emerald/Sapphire's petition to relocate WHMA. [Doc. 23, ¶ 29].

On June 11, 1997, Mr. Hoyt J. Goodrich, as President of Sapphire, assigned, transferred and set over all of Sapphire's rights and other interest in the potential $10-20 million payment to BCI from Susquehanna. BCI currently owns all of Emerald's rights under the Small Agreement. [Doc.6, Goodrich Aff. ¶ 3.].

The Court will also provide a short summary of the procedural history of this case that is relevant for the purposes of this Order.

Plaintiff BCI filed suit against Defendant Small on August 15, 2002, and its complaint [Doc. 1] alleged breach of contract and requested specific performance of the contract, plus all costs and expenses relating to the herein action, including attorney's fees as relief as well as "such other and further relief as the Court may deem just and proper." Its complaint alleged that BCI is entitled to seek a judgment against Small if it is unable to recover from Susquehanna. However, BCI contended that, since Defendant Small stated that he could not and would not pay such a judgment, BCI was forced to proceed in equity

for specific performance and an injunction.

On August 27, 2002, Plaintiff BCI filed a Motion for Preliminary Injunction [Doc. 2], and on September 9, 2002, Defendant Small filed a Motion to Dismiss for Lack of Jurisdiction. [Doc. 8]. This Court denied both of those motions in an Order by Judge Lawson dated November 26, 2002. [Doc. 30]. This Order did not finally resolve the issues of the case but did make some findings of fact which are pertinent to the present order. Plaintiff's claims in equity remain in this litigation, barring any mootness because of dates that have since passed. Also, the Court granted Plaintiff BCI's Motion [Doc. 77] to assert an additional claim for damages against Defendant Small on December 29, 2004 [Doc. 82]. Their Amended Complaint was entered into the record on January 4, 2005 [Doc. 83].

On November 19, 2002, Defendant Small filed an Answer to Plaintiff's Complaint and a Counterclaim [Doc. 29], which he also apparently intended to serve as a Third Party Complaint against Third Party Defendant Susquehanna Radio Corporation. Defendant Small then filed an Amended Answer to Complaint and Counterclaim [Doc. 40] in February of 2003. Third Party Defendant Susquehanna then filed a Motion for Summary Judgment which was granted by this Court in an Order dated May 21, 2004. [Doc. 57]. Defendant Small appealed this decision to the Eleventh Circuit Court of Appeals, and further action in this case was stayed pending the outcome of this appeal. The grant of summary judgment to Third Party Defendant Susquehanna was affirmed on July 12, 2005; so the litigation may now proceed. Bridge Capital Investors II v. Small, 2005 WL 1621046 (11th Cir. 2005).

Plaintiff BCI filed a Motion for Summary Judgment on May 13, 2005 [Doc. 91],

Defendant Small responded [Doc. 94], and Plaintiff replied [Doc. 98]. It is this motion that is presently before the Court for decision.

**DISCUSSION**

Defendant Small's Counterclaim as Amended [Doc. 40] against Plaintiff BCI contains the following claims: (1) Count 1–damages for 1994, 1997, 2001 breaches, (2) Count Two--specific performance of Small Agreement, and (3) Count Three– claim for fraud in the inducement. In its Motion for Summary Judgment [Doc. 91], Plaintiff BCI argues that it is entitled to summary judgment on Defendant Small's counterclaims because they are barred by the statute of limitations and recovery is not allowed as a matter of law.

**I.      Summary Judgment Standard**

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). However, not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52. In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may

not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

## II.     Count One–Damages for Breach and Count Two–Specific Performance of Small Agreement

Defendant Small claims that Plaintiff BCI breached the Small Agreement in 1994, 1997, and 2001, and that Defendant Small is entitled to damages and to specific performance of the Small Agreement payment of $1,000,000.00 because of BCI's alleged breaches. Plaintiff BCI asserts that, even assuming that BCI did breach, Small cannot

recover as a matter of law. The Court will examine each instance of alleged breach to determine if Defendant Small has a valid claim upon which he may recover.

### A.     1994 Breach

In his Counterclaim [Doc. 40], Defendant Small alleges that the May 12, 1994 transfer of Sapphire's stock by Mr. Gammon to BCI triggered the $1,000,000.00 payment obligation under Section 6.2 of the Small Agreement, and the non-payment of same was a breach of the contract. Assuming *arguendo* that the Small Agreement was breached on May 12, 1994, an action for breach of contract on this alleged breach is barred by the applicable six year statute of limitations found in O.C.G.A. § 9-3-24 for breaches of written contracts. This statute provides that "[a]ll actions upon simple contracts in writing shall be brought within six years after the same become due and payable." The $1,000,000.00 obligation would have become payable on May 12, 1994 when the alleged breach occurred, and thus, the statute of limitations ran on May 12, 2000. See Gamble v. Lovett School, 180 Ga. App. 708, 709-10 (1986) (holding that time of breach controls in contract actions for statute of limitations purposes). Small did not attempt to bring a claim for this alleged 1994 breach until November 19, 2002, over two and a half years after the statute of limitations ran.

Defendant Small argues that the six year statute of limitations did not start running on May 12, 1994 because the Small Agreement's $1,000,000.00 payment obligation was a divisible installment contract in which breaches may occur at successive periods and an action lies for each breach with its own six year statute of limitations. Carswell v. Oconee Regional Medical Center, Inc., 270 Ga.App. 155, 157 (2004); Douglas & Lomason Co. v.

Hall, 212 Ga.App. 475, 477(1) (1994). He bases this statement on the theory that the contract states that Small would be entitled to $1,000,000.00 upon the happening of one of several events.  However, Small is taking the wrong perspective in making this argument. Whether the contract is entire or severable as outlined in O.C.G.A. § 13-1-8 is not determined by whether multiple events have the potential to trigger the obligation but rather whether "the whole quantity, service, or thing, all as a whole, is of the essence of the contract, and if it appears that the contract was to take the whole or none, then the contract would be entire, but, on the other hand, if the quantity, service, or thing is to be accepted by successive performances, then the contract may be properly held to be severable." Carswell, 270 Ga. App. at 157.

Here, the $1,000,000.00 contract obligation is entire because the contractual consideration at issue is a single sum certain to be paid in one lump sum.  Small was to have received the whole amount at one time or not at all.  The fact that the whole sum could have been due at different times, whichever came first, according to the contract, does not render the contract divisible. The Court finds that the six year statute of limitations found in O.C.G.A. § 9-3-24 for breaches of written contracts applies and began to run on May 12, 1994 when the alleged breach occurred. Thus, Defendant Small cannot maintain a claim for breach of contract or specific performance of the contract as to the alleged 1994 breach because he brought this claim over two years late.

### B.     1997 and 2001 Breaches

Defendant Small alleges that BCI breached the Small Agreement on May 22, 1997 when BCI transferred radio station WHMA to Susquehanna and that the Small Agreement

was breached in January of 2001 when radio station WHMA began operating in the Atlanta area. These claims fail as a matter of law for several reasons.

First, even assuming that the 1997 and 2001 breaches did occur, the payment of $1,000,000.00 was to happen once, and non-payment of it constitutes one claim for breach of contract. Defendant Small cannot reformulate the contract into three separate claims for breach based on 1994, 1997, and 2001 events and expect to escape the statute of limitations in that way. If, as Defendant Small asserts in paragraph two of his counterclaim, the Small Agreement was breached in 1994, and the $1,000,000.00 obligation was triggered at that time, then that is the breach that began the six year statute of limitations running for a claim for breach of contract for non-payment of the $1,000,000.00, and such limitations period ran on May 12, 2000.

Second, Defendant Small began acting contrary to the agreement's non-compete provisions in 1996 by his FCC filings, as stated by this Court in an Order by Judge Lawson [Doc. 30]. Therefore, as acknowledged by Small's counsel at a hearing before Judge Lawson on October 25, 2002 [Doc. 90], if Small breached the contract first, and 1996 is before 1997 or 2001, Plaintiff BCI is justified in saying that the contract was no longer valid as of Small's breach, and Plaintiff BCI did not and does not owe the $1,000,000.00 to Small. Small argues that this non-compete clause is not valid under the Georgia Constitution or O.C.G.A. § 13-8-2, but if this provision, which is the essence of the Small Agreement, is not valid, then the entire agreement including the $1,000,000.00 obligation is also void. Small's claims would all fail because of the non-existence of a valid contract on which to sue.

Third, the Small Agreement sets forth a six-year "performance period" in paragraph eight of its terms. Small presented the affidavit [Doc. 23] of Timothy Welch, his FCC attorney, who stated that he drafted this performance period provision, and that the Small Agreement "terminated by its own terms" on February 12, 1996, six years after the execution of the contract in 1990. Welch also stated that it appeared that all involved began operating in February of 1996 as if the contract "were a dead letter," including Small who made the filings with the FCC against the provisions of the Small Agreement beginning in December of 1996.

For all of these reasons, any claim brought by Defendant Small for breach of contract based on alleged breaches that occurred in 1997 or 2001 fails as a matter of law. Because Small's claims for damages incurred as result of a breach of contract and for specific performance of the contract in 1994, 1997, and 2001 all fail as a matter of law, the Court **GRANTS** summary judgment to Plaintiff BCI on Counts One and Two of Defendant Small's counterclaim.

### III.    Count Three–Fraud in the Inducement

Both parties acknowledge [Doc. 94, p.8 and Doc. 98, p.1] that the substance of this fraud in the inducement claim was addressed and disposed of in the Court's Order dated May 20, 2004 granting summary judgment in favor of then Third Party Defendant Susquehanna as to Defendant Small's claims against it [Doc. 57]. The Court found that this fraud in the inducement claim is barred by the statute of limitations and that the elements have not been sufficiently established. This decision was affirmed by the Eleventh Circuit in Bridge Capital Investors II v. Small, 2005 WL 1621046, *1-2 (11th Cir. 2005). The

Court finds that its reasoning in its prior order related to this claim is still pertinent as to Defendant Small's counterclaim against Plaintiff BCI.  In light of the Eleventh Circuit's recent decision, the Court **GRANTS** summary judgment in favor of Plaintiff BCI as to Defendant Small's claims for fraud in the inducement contained in Count Three of his counterclaim.

### CONCLUSION

For the above mentioned reasons, having considered the arguments of the parties and the applicable law, the Court finds that Plaintiff BCI is entitled to judgment as a matter of law as to Count One for damages from breach of contract, Count Two for specific performance of contract, and Count Three for fraud in the inducement contained in Defendant Small's counterclaim.  Therefore, the Court **HEREBY GRANTS** Plaintiff BCI's Motion for Summary Judgment as to Defendant Small's entire counterclaim.

**SO ORDERED**, this 11th day of August, 2005.

        S/ C. Ashley Royal
        C. ASHLEY ROYAL
        UNITED STATES DISTRICT JUDGE

LTH/SSH